UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC. and WYNDHAM HOTELS & RESORTS, INC., <br><br><br> *Plaintiffs*, <br><br> v. <br><br> ASH MANAGEMENT CORPORATION and MOHAMMAD ASHRAF, <br><br><br> *Defendants*. | No. 23-cv-3169 (MEF)(JRA) <br><br><br> **OPINION and ORDER** |

\*    \*    \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\*    \*    \*

In 2003, one entity[1] and another entity[2] signed an agreement. See Statement of Undisputed Material Facts ("Defendants' SOMF") (ECF 72-1) ¶ 4; Wyndham Plaintiffs' Response to the Ash Defendants' Statement of Undisputed Material Facts in Support of Summary Judgment ("Plaintiffs' SOMF") (ECF 82-3) ¶ 4; see also Motion for Summary Judgment, Exhibit G ("License Agreement") (ECF 72-4).

It was labeled a License Agreement. See License Agreement at 1.

One of the parties to the License Agreement (Days Inns Worldwide, Inc.) was apparently the licensor, see id. at 1, 20, so it is referred to from here as "the Licensor." The other party (Ash Management Corporation) was apparently the licensee,

---

[1]  Days Inns Worldwide, Inc.

[2]  Ash Management Corporation.

see id. at 1, 3, 5, 7, 9, 20, 23, so it is called "the Licensee."

Under the License Agreement, the Licensee was to run a hotel. See Complaint ¶ 9, Days Inns Worldwide, Inc. v. Ash Mgmt. Corp. (D.N.J. June 27, 2023) (No. 23-3472) (ECF 1); Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint ¶ 9, Days Inns Worldwide, Inc. v. Ash Mgmt. Corp. (D.N.J. Nov. 13, 2023) (No. 23-3472) (ECF 11).

Around 20 years after the License Agreement was inked, the apparent parent company[3] of the Licensor was sued --- twice, each time as to alleged sex-trafficking at the hotel. See Defendants' SOMF ¶¶ 1-3; Plaintiffs' SOMF ¶¶ 1-3.

\*        \*        \*

In light of the above, this lawsuit was filed by (i) the apparent parent company ("the Licensor's Parent Company") and (ii) the Licensor.  They are together called "the Plaintiffs."

The Plaintiffs sued (i) the Licensee-hotel operator,[4] plus (ii) an individual.[5]  They are together called "the Defendants."

The gist of the Plaintiffs' claim: under the License Agreement, the Defendants are required to make indemnification payments for attorneys' fees and costs associated with the sex-trafficking lawsuits.  See Complaint ¶¶ 9-23.

The Defendants have now moved for summary judgment, contending that they do not have to cover the fees and costs.  See Defendants Ash Management Corporation and Mohammad Ashraf's Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Brief") (ECF 72) at 1.

The motion is denied.

\*        \*        \*

---

[3]  Wyndham Hotels & Resorts, Inc.  See Complaint ¶ 2, Days Inns Worldwide, Inc. v. Ash Mgmt. Corp. (D.N.J. June 27, 2023) (No. 23-3472) (ECF 1).

[4]  Ash Management Corporation.

[5]  Mohammad Ashraf.

2

Work through each of the Defendants' five arguments for summary judgment.  As set out below, none is persuasive.

*     *     *

First, the Defendants assert that they have no obligation to indemnify because the "motive" of the people who sued in the two underlying sex-trafficking lawsuits was to hold the Licensor responsible.  See Defendants' Brief at 6-10.

The plaintiffs in the sex-trafficking lawsuits, the argument seems to go, wanted to reach the Licensor's Parent Company (one of the Plaintiffs here) not the Licensee (one of the Defendants here).  And that, it is suggested, would be undone if the Defendants were required to indemnify the Plaintiffs for lawyer fees and costs.

The necessary premise of this argument is that the "motive" of the plaintiffs in the sex-trafficking lawsuits matters here, that it can move the needle on the indemnification question now before the Court.

But whether the Defendants must indemnify the Plaintiffs turns on the License Agreement.  See Days Inns Worldwide, Inc. v. MGH Hosp. Ltd., 2026 WL 1329449, at *1-2 (D.N.J. May 13, 2026).  And it says nothing about motives.

> [The Licensee-Defendant] will indemnify . . . the Indemnitees from and against all Losses and Expenses, incurred by Indemnitees for any . . . suit . . . relating to or arising out of any transaction, occurrence, or service at, or involving the operation of, the [hotel].

License Agreement § 8.1, at 10 (emphasis added).[6]

"[A]ny . . . suit."  Not just the subset of suits that are animated by certain motives.

*     *     *

Second, the Defendants argue that they do not have to satisfy any indemnification obligations because it was the Licensor's Parent Company who "committed the first material breach of the [License] Agreement."  See Defendants' Brief at 10-12.

---

[6]  The agreement defines "Indemnitees" to include, as relevant here, the Plaintiffs.  See License Agreement at 26.

What breach?  The Defendants' argument is apparently that, under the License Agreement, the Licensor was required to "mandate" that the Licensee take certain training --- but the Licensor did not impose that mandate and make it stick.  See id.

But the Defendants have not shown that the License Agreement says anything about a mandate.  Under the License Agreement passages that have been brought to the Court's attention, the Licensor did not have to require ("mandate") that the Licensee undergo certain training.  Rather, the Licensor just had to offer certain training to the Licensee.  Per the Agreement:

> We will offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager and owner orientation training, on-site opening training, remedial training and supplemental training.

License Agreement § 4.1, at 6.[7]

Offering training and mandating it --- these are not the same thing.  Under state law, for example, a local high school might have to offer a chemistry class.  But that does not mean that the high school needs to make each student take it.

In short: the Licensor's "first breach" of the obligation to mandate training is said to relieve the Defendants of any indemnification obligation they might otherwise have had.  See Defendants' Brief at 12.  But that argument cannot get off the ground because the Defendants[8] have not shown that a training mandate is a part of the License Agreement in the first place.[9]

---

[7]  It appears that training was offered.  See Motion for Summary Judgment, Exhibit A (ECF 71-3) at 3-4 (indicating that the Plaintiffs made "training regarding human trafficking prevention and awareness . . . available to franchisees as early as 2012").  In their legal brief, the Defendants seem to suggest that the training may not have been sufficient.  See Defendants' Brief at 11-12.  But they do not meaningfully explain what made it insufficient.  Or what part of the License Agreement required that better or different training be provided, let alone that anyone be mandated to take it.

[8]  Who have the burden.  See Shields, 254 F.3d at 481.

[9]  There may also be a more basic set of difficulties with the Defendants' "first breach" argument.  Even if there had been a

4

\*    \*    \*

<u>Third</u>, the Defendants argue that the Licensor's Parent Company violated the implied covenant of good faith and fair dealing built into the License Agreement by picking a law firm that was especially pricey --- and now seeking indemnification for the "unreasonable" fees and costs the law firm charged. <u>See</u> Defendants' Brief at 12-13.

To make out an implied covenant claim, the law of some states requires "an allegation of[] bad faith on the part of the defendant." <u>See</u> 23 Williston on Contracts § 63:22 (4th ed. 2026). In other states, "inequitable conduct in the performance of . . . contractual obligations" is enough, even standing alone. <u>Id</u>.

---

failure by the Licensor to comply with a clause in the License Agreement (as contended here, a mandatory-training clause) --- that would likely have relieved the Licensee of its License Agreement indemnification obligation only in certain limited circumstances. What sorts of circumstances? Maybe if the hypothesized mandatory-training requirement was a condition precedent to the indemnification requirement. <u>See</u> <u>Duff</u> v. <u>Trenton Beverage Co.</u>, 4 N.J. 595, 604 (1950) ("Generally, no liability can arise on a promise subject to a condition precedent until the condition is met.") But the Defendants develop no condition precedent argument. Or maybe if, in the face of a breach of a hypothesized mandatory-training requirement, the Licensee had walked away from the License Agreement and terminated it. <u>See</u> <u>generally</u> <u>Frank Stamato & Co.</u> v. <u>Borough of Lodi</u>, 4 N.J. 14, 21 (1950) ("In a case of a material breach of contract which does not . . . indicate any intention to renounce or repudiate the remainder of the contract the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part.") (cleaned up). But no evidence of termination has been put before the Court.

5

Under New Jersey law,[10] a showing of bad faith is needed.  The New Jersey Supreme Court has made that clear.[11]  And the Third Circuit understands New Jersey law that way, too.[12]

_____

[10]  Which controls here.  See License Agreement § 17.6.1, at 20.

[11]  See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) ("[p]roof of bad motive or intention is vital to an action for breach of the covenant" of good faith and fair dealing) (cleaned up); Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 63 (2024) (similar); Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."); Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (listing proof of "bad motive or intention" as one of the elements of a breach of the covenant of good faith and fair dealing claim) (cleaned up); see also 49 New Jersey Practice, Business Law Deskbook § 7:26 (2025–2026 ed.) (noting that a plaintiff "must prove" the defendant's "bad motive or intention" to prevail on a claim for the breach of the implied covenant of good faith and fair dealing); 30A New Jersey Practice, Law of Mortgages § 32A.10 (2d ed. 2025) (describing a New Jersey law claim for the breach of the covenant of good faith and fair dealing as having a "'state of mind or malice-like' element").

[12]  See, e.g., Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329 (3d Cir. 2006); Coba v. Ford Motor Co., 932 F.3d 114, 124 (3d Cir. 2019); Sat Agiyar, LLC 7 Eleven, Inc. v. Patel, 2026 WL 608752, at *4 (3d Cir. Mar. 4, 2026).

But here, the Defendants do not come forward with any meaningful "bad motive" evidence.[13]  So their implied covenant claim cannot work.[14]

\*     \*     \*

---

[13]  And note that the evidence put before the Court seems to affirmatively suggest everyday motives, not "bad" ones.  This Opinion and Order concerns the Defendants' motion for summary judgment.  But the Plaintiffs have also cross-moved for summary judgment.  See Notice of Motion for Partial Summary Judgment ("Plaintiffs' Motion for Summary Judgment") (ECF 77).  The Plaintiffs' summary judgment motion attaches a letter.  See Plaintiffs' Motion for Summary Judgment, Exhibit 37 at 1 (ECF 77-8).  And the Court can consider the letter here, in deciding the Defendants' summary judgment motion.  See, e.g., Torry v. City of Chicago, 932 F.3d 579, 584 (7th Cir. 2019); Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011).  The letter --- which the Defendants do not contest or seek to undermine --- suggests that the Plaintiffs picked the law firm they did because the firm was already working on similar, pending lawsuits.  See Plaintiffs' Motion for Summary Judgment, Exhibit 37 at 1 ("As you may be aware, [the Plaintiffs] ha[ve] retained [the law firm] . . . as national coordinating counsel for the more than 30 sex trafficking actions pending against [the Plaintiffs.]").  And because the firm had relevant experience.  See id. ("[The law firm] has vast experience defending suits like the [two underlying sex-trafficking lawsuits] and in coordinating numerous actions on behalf of a single client").  These are bread-and-butter motives, not "bad" ones of the sort required to establish an implied covenant claim under New Jersey law.

[14]  If, later, there is a motion for attorneys' fees and costs in a specific amount, the Defendants will then be permitted to argue that the proffered amount is not "reasonable," as required by the License Agreement.  Cf. Days Inns Worldwide, Inc. v. 4200 Rose Hosp., 2025 WL 2450755, at *9 (D.N.J. Aug. 25, 2025).  But the argument made here is different.  It is not that, say, $300 an hour is not reasonable but that $200 an hour can be paid.  Rather, the argument is that there is no indemnification obligation here at all --- because the Licensor picked a too-expensive law firm I the first place.

Fourth, the Defendants argue that the Licensor waived its right to seek indemnification.  See Defendants' Brief at 13.

The burden is the Defendants' to shoulder, see Shields, 254 F.3d at 481, and they have not done so.

Their waiver argument is sparse, a paragraph long.  And it is not backed up by citations to any substantial legal authority.

Moreover, the bar is set high.  Under New Jersey law, "[a] party waives its right to enforce a contract provision if it consistently acts in such a way as to indicate that it does not intend to hold the other contracting party to that provision." Hilal v. Han, 2019 WL 3521522, at *3 (N.J. Super Ct. App. Div. Aug. 2, 2019) (citing Schlegel v. Bott, 93 N.J. Eq. 607, 610 (N.J. 1922)); see also Lane v. Blackwood Ests., 104 N.J.L. 152, 155 (1927) (similar).

But the evidence before the Court,[15] does not suggest anything like that.

A February 2021 letter from the parent of the Licensor reads in relevant part:

> [The Licensor's Parent Company] reiterates its request that [the Licensee] take immediate steps to honor its obligations under the [License] Agreement.  These include confirming its obligation to indemnify [the Licensor's Parent] . . . .

Motion for Summary Judgment, Exhibit B (ECF 72-2) at 2-3.

And a July 2022 letter from the parent of the Licensor to the Licensee:

> This letter is to advise you that under the terms of  . . . [the License A]greement . . . you are obligated to indemnify [the Licensor and its parent company] . . . against any liability arising from your operation of the [hotel] and to further indemnify [the Licensor] for all costs, fees, and expenses they incur in their defense of these matters.

Id. at 4.

---

[15]  Which is cited by the Defendants.  See Defendants' Brief at 13.

This is not "consistent[] act[ion]"[16] to shrug off one's contractual indemnification rights and to abandon them.  If anything, the opposite.

\*      \*      \*

Fifth and finally, the Defendants argue that there can be no indemnification requirement here because the Licensor "failed to mitigate its alleged damages."  See Defendants' Brief at 14-16.

Failure to mitigate can reduce the bottom-line damages that are ultimately owed.  But the Defendants have not meaningfully tried to show that an asserted failure to mitigate damages might count as a full defense as to the liability question that is on the table for now --- the question of whether the Defendants have to make any indemnification payment in the first place.  Cf. footnote 14.

\*      \*      \*

The motion for summary judgment at ECF 71 is denied.

It is on this 1st day of June, 2026 **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

---

16   Hilal, 2019 WL 3521522, at \*3.

9